# Case No. 15,930.

## UNITED STATES v. ONE DISTILLERY.

[2 Bond, 399.] [1]

District Court, S. D. Ohio. Oct. Term, 1871.

INTERNAL REVENUE—FORFEITURE—EVIDENCE— RECORD—TESTIMONY OF ACCOMPLICE.

1. Where in a proceeding for the forfeiture of property, under the internal revenue statutes, on the ground of fraud, the information in different counts avers several frauds, under different sections of the statute, a verdict of forfeiture will be sustained, if there is one count setting forth a fraud, within the words of any one of the sections.

2. An accomplice in the commission of the frauds charged, is a competent witness, but his testimony is to be received with great caution; and a jury should hesitate to base a verdict upon it, unless corroborated by other reliable testimony.

[1] [Reported by Lewis H. Bond. Esq., and here-reprinted by permission.]

3. The record of a court of competent jurisdiction in a case between the same parties, involving the same property, and prosecuted for the same object as the second suit, is conclusive of the facts appearing in it.

4. But where, as in this case, the proceeding is for the forfeiture of a distillery, and numerous articles of property pertaining to it, specified in the information, for fraudulent distillation, a record proving the forfeiture of spirits from the same distillery, for alleged frauds, by the decree of another court, is not conclusive evidence of the frauds charged in this information.

5. But such record is admissible to the jury as a circumstance strengthening the presumption of the frauds charged in this case; and also as corroborative of the witnesses testifying for the United States, who were accomplices in the commission of the frauds.

Warner M. Bateman, Dist. Atty., and Lewis H. Bond, for the United States.

Burnett, Follett & Wright, for claimant.

LEAVITT, District Judge (charging jury). Under the authority of the proper officer of the government, a distillery and the other property connected with it have been seized for an alleged violation of the revenue laws. The information in the case asserts various frauds in the conduct and management of the distillery, subjecting it, with all its appurtenances, to forfeiture, under several provisions of law, among others section 44 of the act of July 20, 1868 [15 Stat. 125]. I will not detain you by a special notice of the different counts, or articles, in the information, or an analysis of the sections of the statute on which they are based. Many legal propositions and points have been presented, touching the sufficiency of some of the counts or charges set forth in the information. It will, however, be obvious to the jury that the main inquiry is, whether there has been illicit and unlawful distillation of spirits at this distillery, and such frauds committed, as by law will justify a verdict of forfeiture. And, if there is but one count or charge in the information, meeting the provisions of but one section of the statute, as a ground of forfeiture, it will justify a verdict against the claimant, if the evidence, in the judgment of the jury, sustains the charge. It will probably simplify the inquiries of the jury, and make their duty more plain, to state that whatever doubts or difficulties may exist in the mind of the court, as to the sufficiency of some of the counts or charges in the information, or the true construction of the sections of law, on which they are framed, the court is clear in saying that the fifth count or charge is good, as describing and setting forth an act of illegal and illicit distillation within the words and meaning of section 41 of the statute. This section, in plain and comprehensive language, strikes at and prohibits all frauds in the business of the distillation of spirits. And it may be proper here to suggest to the jury, if satisfied from the evidence that the frauds charged in the fifth count are proved, they may base their verdict on that count.

Joseph R. Huston is the claimant of the distillery and other property sought to be forfeited in this proceeding. He has filed his answer, admitting the ownership of the distillery, as a lessee, but denying all the allegations of fraud charged by the United States.

The theory on which the attorneys for the United States claim the forfeiture of the property in question is, that in August, 1868, certain parties—Hoffman, Musson, Huston, the claimant, and one Schelberger—rented a rectifying distillery owned by William Harries, in the city of Dayton, and were to carry on business as rectifiers, as a firm, under the name of Musson & Co. By the agreement, which was verbal, it is claimed by the government, Huston was to furnish the spirits to be rectified, and the profits of the business were to be divided in the proportions agreed upon. There is some conflict in the testimony as to the persons constituting the firm of Musson & Co. This, however, is not a material inquiry, if the testimony proves that Huston, as the owner of the distillery at which the spirits were manufactured, was connected with the frauds charged. It is claimed by the United States that seven different lots of spirits, of fifty barrels each, manufactured at Huston's distillery, were sent, in the fall of 1868, to the rectifying establishment, and passed into the market and were sold, without the payment of the full legal tax, with the knowledge of Huston, who participated in the fraud, and shared in the pecuniary profits arising therefrom.

The method by which, as claimed by the government, the alleged frauds were perpetrated, was by falsely branding and marking the barrels at the distillery below the real proof, and paying the tax according to such false branding and gauging, whereby the government was defrauded to the amount of tax at $2 the gallon, on from ten to fifteen gallons on every barrel. The aggregate of the sum of which the United States was thus defrauded, on the three hundred and fifty barrels alleged to have been furnished by Huston to the rectifier, would be very considerable, and would be clear profit to the parties concerned. If the jury are satisfied that this ingenious device was practiced with the knowledge of Huston, and that he participated in the fraud, there can be no question that it affords a sufficient basis for a verdict of forfeiture, as claimed by the district attorney. It was a palpable fraud, and clearly within section 44 of the act of 1868, and other provisions of that statute. It takes nothing from the repulsive character of the fraud, that it must have been committed with the knowledge of a government official, acting under the obligation of an oath. If the false branding charged was practiced, it could not have

been done without the corrupt connivance of the revenue official, whose sworn duty it was to see that the barrels were correctly branded, as to the quantity and proof of the spirits distilled.

The case, so far as the jury are concerned, resolves itself into the single inquiry, whether the alleged frauds are proved to their satisfaction. I shall not detain the jury by any attempt to recite or even advert specially to the evidence adduced. This is wholly unnecessary, if it were proper. It will doubtless be obvious to the jury, that their verdict depends mainly on the credibility of the witnesses. If the jury give credit to the testimony of Hoffman and Musson, the principal witnesses for the government, they can not hesitate to find that the frauds charged are proved. On the other hand, if their testimony is rejected as unworthy of belief, and the testimony of the claimant, Huston, and other witnesses in his behalf, is received by the jury as entitled to credit, the allegations of fraud are not substantiated. The witnesses, Hoffman and Musson, occupy a somewhat peculiar position before you. They admit that they were cognizant of, and parties to, the frauds charged in this information. They were what the law terms accomplices in the commission of the fraudulent acts charged. Hoffman had obtained an assurance in writing from the commissioner of the internal revenue department, that upon his making a full disclosure of these alleged frauds, he should be protected from prosecutions for his complicity in them. As to the witness, Musson, it does not appear that any such promise was made, but it is proved that he is the informer in this case, and has a direct interest in the result. As the question of the credit to be given to the testimony of these witnesses may have a decisive influence with the jury in making their verdict, it is proper for the court to state the law applicable to it. And I may remark, that it is obvious that the fact that a witness has been an accomplice in a crime, or a fraud charged upon others, is suited to impair confidence in his testimony. He testifies with a taint in his moral character, which naturally induces a suspicion of his veracity. But the law, except after a conviction for an infamous crime, does not deprive him of the right of being a witness. He may be used as such, and his credibility left to the jury. It is well settled, however, that his testimony should be received with great caution, and where the accusation is for a felony, involving great moral turpitude in its commission, it is unsafe to return a verdict of guilty upon the sole evidence of an accomplice. If, however, an accomplice, used as a witness, is sustained and corroborated by credible testimony, in the material facts sworn to, there is, of course, no reason why he should be deemed unworthy of credit as to such facts.

The attorneys for the United States claim that the witnesses, Hoffman and Musson, are substantially corroborated by other reliable testimony, and that they are to be accredited as truthful witnesses of the gross frauds charged; and, also, that Huston, the claimant, is directly implicated in those frauds. It is insisted that the books of the rectifying establishment clearly prove the receipt of large quantities of spirits directly from Huston's distillery, with his knowledge, and that these spirits passed from the rectifier, and were sold by Huston and those associated with him, in the fraudulent manner to which the court has before adverted. These books are before the jury, and will be for their inspection. If they find, as claimed by the attorneys for the United States, that Huston received the payment for any part of the spirits sent from the rectifier, or that any of the entries made in the books were made by him, such proof would certainly be corroborative of the testimony of the witnesses, Hoffman and Musson.

Another fact relied on by the counsel for the United States, as evidence of the frauds charged, and as sustaining the testimony of the two witnesses named, is a record of the trial and condemnation, in November, 1870, of fifty barrels of spirits, shipped from the rectifier by Huston to Baltimore, and there seized by the collector. Huston filed a claim to the fifty barrels, and in his answer denied all the allegations of fraud. He also testified as a witness in the case. The trial was in the district court of the United States for the district of Maryland. The jury found, by their verdict, that the frauds charged were proved, and there was a judgment of forfeiture. All these facts appear from the record of the court. The jury will, doubtless, remember that this record, when offered in evidence by the counsel for the United States, was objected to by the counsel for the claimant, as not being legally admissible in this case. The court overruled the objection, and permitted the record to go to the jury. The attorneys for the United States claimed that it was conclusive to prove the frauds charged in this case. The court, however, on this point, instruct the jury that it has not this far-reaching effect. There is no question that the record of a court of competent jurisdiction is conclusive as to all facts which appear to have been passed upon in a case between the same parties, involving the same property, and where the second suit is brought for the same object or purpose as the first. The record is conclusive to prove that fifty barrels of whisky, claimed by Huston, were fraudulent, and were forfeited by the judgment or decree of the court; but it is not conclusive to prove that the distillery of Huston, and all the other property specified in this information, are subject to forfeiture for the frauds charged in this case. But the record in question may be taken into consideration by the jury; first, as tend-

ing to corroborate the testimony of Hoffman and Musson, in proving the fact that the fifty barrels of spirits shipped by Huston to Baltimore were infected with fraud; and, secondly, as a fact or circumstance bearing on the question of the frauds charged in this case. In either of these aspects, this record is competent testimony, and may be considered by the jury.

I will not further detain the jury, except to remind them of what has been before suggested, that the case turns, as it seems to the court, wholly on the credit to be given to the witnesses for the opposing parties. There is direct conflict in their testimony, in reference to material facts, involving the merits of the case. And the jury will probably find it impossible to reconcile these conflicts consistently with the integrity and truthfulness of the witnesses on both sides. They will be forced to the unpleasant conclusion that the sworn statements of the opposing witnesses can not both be true, and that from the character of the facts to which they have testified, there is too much reason to conclude there has been willful falsification. But it is the exclusive province of the jury, in the exercise of their best judgment, to decide upon the credit due to the evidence.

The jury returned a verdict for the United States.